**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **DARRELL G. HAFEN,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | **Case No. 2:07-cv-00646-PGC-PMW** |
| **v.** | |
| **TOM WILLIAMSON and NATIONAL PARK SERVICE,** | **District Judge Paul G. Cassell** |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Paul G. Cassell pursuant to 28 U.S.C. § 636(b)(1)(B). Before the court are Darrell G. Hafen's ("Plaintiff") motion for leave to file an amended complaint,[1] two motions to appoint counsel,[2] two motions for a temporary restraining order ("TRO"),[3] and "Motion for Direction."[4] Because Plaintiff is proceeding pro se, the court will construe his pleadings liberally. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

---

[1] *See* docket no. 7.

[2] *See* docket nos. 4, 6.

[3] *See* docket no. 8, 12.

[4] *See* docket no. 11.

## BACKGROUND

On August 30, 2007, the court granted Plaintiff's application to proceed in forma pauperis under 28 U.S.C. § 1915 (the "in forma pauperis statute").[5]  Plaintiff's complaint was filed the same day.[6]  Soon thereafter, on September 4, 2007, Plaintiff filed his first motion to appoint counsel.[7]

In his complaint, Plaintiff appears to allege that at some point in the past, an official from the National Park Service (the "NPS") promised that Plaintiff could take over the "concessions at Zion, Bryce[,] and Grand Canyon (North Rim) National Parks."  According to Plaintiff, those concessions are now up for renewal, and Defendant Tom Williamson, who apparently works for the NPS, has indicated that "he does not have the authority to issue a sole service contract" for those concessions to Plaintiff.  Plaintiff claims that because he is seeking the contract for the concessions "in the public interest," that contract should be awarded to him without being subject to bidding, pursuant to the "National Parks Concession Management Act of 1998."  Accordingly, Plaintiff seeks a declaratory judgment from this court "stating that the exemption from bidding in the public interest fits [his] proposal."

---

[5] *See* docket no. 2.

[6] *See* docket no. 3.

[7] *See* docket no. 4.

As to his claim that his "proposal" is "in the public interest," Plaintiff claims that he is "making arrangements to donate all the net profits of the operations to the public interest." Plaintiff's cites causes which he believes qualify as part of "the public interest," including:

- "[I]n honor of Laura Bush for a Junior Ranger program."

- "[T]he problem with mussels in Lake Mead."

- The miners involved in "the [m]ine disaster at the Crandall Canyon mine in Huntington," Utah.

- "[T]he victims of the massacre at Virginia Tech."

On September 13, 2007, Plaintiff filed a second motion to appoint counsel.[8]  Several days later, on September 18, 2007, Plaintiff filed a motion for leave to amend his complaint,[9] as well as his first motion for a TRO.[10]

In his motion for leave to amend his complaint, Plaintiff asserts that he "need[s] to make sure that the [a]mended [c]omplaint includes all potential causes [o]f action."  That motion goes on to discuss various matters that Plaintiff believes are relevant to or should be included in the amended complaint, including:

- "[T]he passing of former Governor Calvin Rampton[,] who is one of the Governors that [Plaintiff] intended to call as a witness."

---

[8]  *See* docket no. 6.

[9]  *See* docket no. 7.

[10]  *See* docket no. 8.

- The NPS's "connect[ion] to a project in the far north at the Bering Straits [sic]" and its calling of "a conference in Anadyr, Chukotka, Russia," which are "part of the work that [Plaintiff has] been involved with over the years[,] seeking to find [a] way to get back to [his] project that was taken away from [him] by illegal means."

- "[T]he Beringia conference . . . deal[ing] with [Plaintiff's] work over [t]he years in water and power and mag lev trains and superconductor power cables, [all of which] is coming into reality[,] and the NPS is involved."

- Plaintiff's recent contact with the NPS "dealing with the 12 adopted Russian children that [he] plan[s] to give the opportunity to perform at the Grand Canyon North [R]im in the evening time.  [Plaintiff has] arranged for them to perform at the Russian Embassy and Gettysburg National Park with their patriotic theme, and now [Plaintiff] is asking the NPS to at least let them perform at Grand Canyon North Rim before the season [c]loses," which would also allow Plaintiff "to review the closing procedures of the lodge with the General Manager at the North Rim, and to arrange lodging for the children."

- The importance of Plaintiff and the court "work[ing] [t]ogether," given that "[t]he future of our Country is involved because [Plaintiff] may want to include the Bering Straits [sic] project as a public [i]nterest matter that would qualify for some of the net profits" from the concessions. Plaintiff claims that "[t]he NPS team already [r]ecognizes this fact since they are involved with the Russians on these conferences."

In his first motion for a TRO, it appears that Plaintiff is asking the court to stop the NPS from completing "the process of awarding the [NPS] [c]oncession contract for the North Rim of the Grand Canyon."  Plaintiff claims that the completion of said process will cause irreparable

harm to both Plaintiff and the NPS.  Plaintiff's motion also purports to set a hearing on the motion in the chambers of Magistrate Judge Warner on September 25, 2007.[11]

The day after filing his first motion for a TRO, Plaintiff filed an exhibit in support of that motion.[12]  That filing consists of a one page explanation and the exhibit, which is a Deseret Morning News newspaper article from September 16, 2007, that discusses a trip made by a group of Utah veterans to the National World War II Memorial in Washington, D.C.  Plaintiff explains that the article "deal[s] with a Hero's flight [o]f veterans to Washington[,] D.C., which [he] attended."  Plaintiff asserts that during his attendance, he "was able to renew [his] [a]ssociation with Senator Bob Dole . . . and Senator Orrin Hatch."  Plaintiff asserts that the article "is intended to support [his] contention" that the NPS should "grant [him] the concessions at Zion, Bryce[,] and Grand Canyon ([N]orth [R]im)."  Plaintiff reiterates his belief that his motion had the effect of scheduling a hearing before the court on September 25, 2007.  Plaintiff further asserts that "[a]pproval of [his] temporary restraining [o]rder, and eventually, a permanent injunction[,] will send a message to all veterans [t]hat the NPS wants to do business with veterans."

---

[11]  Plaintiff's first motion for a TRO actually stated that the hearing would take place on August 25, 2007.  Given the filing date of the motion, and Plaintiff's indication in a later filing that the hearing was to take place on September 25, 2007, the court assumes that Plaintiff's reference to August was a typographical error.

[12]  *See* docket no. 9.

On September 21, 2007, Plaintiff filed a "Motion for Direction."[13]  In that motion, Plaintiff appears to be inquiring as to why the court has not yet resolved his other pending motions.  He notes that those motions "need to be resolved in [a] timely fashion in order to protect [his] Constitutional rights."  He also requests an explanation concerning the court's failure to hold a hearing on the date indicated in his first motion for a TRO.

On September 24, 2007, Plaintiff filed a notice with the court indicating that he intended to retain an attorney to represent him in this case.[14]  Most recently, on September 26, 2007, Plaintiff filed a second motion for a TRO.[15]  Along with that motion, Plaintiff submitted a "General Statement to the Court," which contains numerous allegations and claims that Plaintiff asserts are somehow relevant to this case, yet appear to have little or no relation to the claims contained in his complaint.

## ANALYSIS

### I. Dismissal Under the In Forma Pauperis Statute

Whenever the court authorizes a party to proceed without the prepayment of fees under the in forma pauperis statute, the court is required to "dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious."  28 U.S.C.

---

[13]  *See* docket no. 11.

[14]  *See* docket no. 10.

[15]  *See* docket no. 12.

§ 1915(e)(2)(B)(i).  The United States Supreme Court has construed the term "frivolous" within

the context of the in forma pauperis statute by stating that

> a complaint, containing as it does both factual allegations and legal
> conclusions, is frivolous where it lacks an arguable basis either in
> law or in fact. . . . [The in forma pauperis statute]'s term
> "frivolous," when applied to a complaint, embraces not only the
> inarguable legal conclusion, but also the fanciful factual allegation.

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The in forma pauperis statute

> accords judges not only the authority to dismiss a claim based on
> an indisputably meritless legal theory, but also the unusual power
> to pierce the veil of the complaint's factual allegations and dismiss
> those claims whose factual contentions are clearly baseless.
> Examples of the former class are claims against which it is clear
> that the defendants are immune from suit . . . and claims of
> infringement of a legal interest which clearly does not exist . . . .
> Examples of the latter class are claims describing fantastic or
> delusional scenarios . . . .

*Id*. at 327-28; *see also Hall v. Bellmon*, 935 F.2d 1106, 1108-10 (10th Cir. 1991).

The court has determined that Plaintiff's complaint falls squarely within the first of those

two categories because his claims are based on a meritless legal theory.  Plaintiff claims that he is

entitled to take over the NPS "concessions at Zion, Bryce[,] and Grand Canyon (North Rim)

National Parks" because those concessions were "promised" to him in the past.  Plaintiff also

asserts that because he is seeking the contract for the concessions "in the public interest," his

proposal is not subject to the public solicitation and competitive selection process for awarding

NPS concessions contracts.

With limited exceptions, NPS concessions contracts can be awarded only by way of a

competitive selection process.  *See* 16 U.S.C. § 5952(1).  Plaintiff claims that his proposal "fits"

under one of the exceptions to that process.  Although it is not clear to the court that Plaintiff's proposal actually "fits" under that exception, even if the court accepts that allegation as true, the statutory language of the exception is not mandatory.  *See id*. § 5952(11)(B) ("Notwithstanding the provisions of this section, the Secretary [of the Interior] *may* award, without public solicitation, . . . [a] concessions contract in extraordinary circumstances where compelling and equitable considerations require the award of a concessions contract to a particular party in the public interest." (emphasis added)).  In other words, even if Plaintiff's proposal actually "fits" under that exception, nothing in the statutory language of the exception mandates that Plaintiff be awarded the concessions contracts in question.  *See id*.  In sum, Plaintiff's complaint seeks protection of a "legal interest which clearly does not exist."  *Neitzke*, 490 U.S. at 327.

In addition to being based on a meritless legal theory, the court has also determined that the factual allegations contained in Plaintiff's pleadings "rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), and describe "fantastic or delusional scenarios."  *Neitzke*, 490 U.S. at 328.  Plaintiff's pleadings are replete with incredible and fantastic factual allegations that have little or no relation to his asserted legal claim.  Further, it appears that most, if not all, of those allegations have little or no basis in fact.

For all of these reasons, the court concludes that Plaintiff's complaint is frivolous under the in forma pauperis statute and, therefore, should be **DISMISSED**.  *See* 28 U.S.C. § 1915(e)(2)(B)(i); *Denton*, 504 U.S. at 33; *Neitzke*, 490 U.S. at 325-28; *Bellmon*, 935 F.2d at 1108-10.

8

## II.  Motion for Leave to Amend Complaint

Pursuant to rule 15(a), leave to amend pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that the mandate of rule 15(a) "is to be heeded" and that "[i]n the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" (quoting Fed. R. Civ. P. 15(a)).  However, even under this liberal standard, "the district court may deny leave to amend where amendment would be futile.  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotations and citation omitted).

After reviewing Plaintiff's motion for leave to amend his complaint, the court has determined that it does nothing to affect the court's conclusion that his complaint should be dismissed under the in forma pauperis statute.  Plaintiff's motion is largely nonsensical.  He includes outlandish factual allegations and claims that have little or no relation to those contained in his complaint.  Even if Plaintiff's motion was granted, his complaint would still be subject to dismissal, and consequently, the amendment would be futile.  *See id*.  Therefore, Plaintiff's motion for leave to amend his complaint should be **DENIED**.

## III.  Motions to Appoint Counsel

In support of his two motions for appointment of counsel, Plaintiff cites the short time frame for taking over the concessions and the "need to secure permission to visit the facilities at Grand North Rim before they close . . . for the winter."  He also indicates that his intention to donate the net profits from the concessions to the miners involved in the recent "[m]ine disaster

at the Crandall Canyon mine" is "such an important change that [he] absolutely need[s] professional counsel."

"There is no constitutional right to appointed counsel in a civil case." *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1988) (per curiam).  In addition, "[t]he appointment of counsel in a civil case is left to the sound discretion of the district court."  *Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994).

The court has already determined that Plaintiff's claims are based on a meritless legal theory.  The assistance of counsel would not alter this determination.  In addition, Plaintiff has recently indicated that he intends to retain an attorney to represent him in this case.[16]  For these reasons, Plaintiff's two motions for appointment of counsel should be **DENIED**.

### IV.  Motions for a TRO

The same standard applies to the issuance of a TRO and a preliminary injunction.  *See Bauchman ex rel. Bauchman v. West High Sch.*, 900 F. Supp. 248, 250 (D. Utah 1995).  In order to be entitled to a TRO,

> the moving party must establish that:  (1) [he or she] will suffer
> irreparable injury unless the injunction issues; (2) the threatened
> injury . . . outweighs whatever damage the proposed injunction
> may cause the opposing party; (3) the injunction, if issued, would
> not be adverse to the public interest; and (4) there is a substantial
> likelihood [of success] on the merits.

*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (alterations in original) (quotations and citations omitted).

---

[16] *See* docket no. 10.

Because the court has determined that Plaintiff's claims are without merit and that his complaint should be dismissed, it logically follows that Plaintiff has not established a substantial likelihood of succeeding on the merits of his claims.  *See id*.  Accordingly, Plaintiff's two motions for a TRO should be **DENIED**.

### V.  "Motion for Direction"

In this motion, Plaintiff appears to be inquiring as to why the court has not yet resolved his other pending motions.  He also requests an explanation concerning the court's failure to hold a hearing on the date indicated in his first motion for a TRO.

Plaintiff's assertions concerning the court's speed in resolving his pending motions are both disrespectful and wholly inappropriate.  This notwithstanding, in the court's view, Plaintiff's pleas for urgency have been more than adequately satisfied.  The oldest of Plaintiff's motions has been pending for approximately three weeks,[17] and the remaining motions have all been pending for less than two weeks.[18]  Even more to the point, the court is issuing this Report and Recommendation resolving all of Plaintiff's pending motions within thirty days of the filing date of Plaintiff's complaint.[19]

As to Plaintiff's request for an explanation concerning the court's failure to hold a hearing, it appears that Plaintiff believes he was somehow entitled to a hearing on the date he

---

[17] *See* docket no. 4.

[18] *See* docket nos. 6, 7, 8, 11.

[19] *See* docket no. 3.

indicated in his first motion for a TRO.  Plaintiff's belief is incorrect.  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, it is left to the court, not the parties, to determine whether a hearing will be held on any particular motion. *See* DUCivR 7-1(f) ("The court on its own initiative may set any motion for oral argument or hearing.  Otherwise, requests for oral arguments on motions will be granted on good cause shown.  If oral argument is to be heard, the motion will be promptly set for hearing.  Otherwise, motions are to be submitted to and will be determined by the court on the basis of the written memoranda of the parties.").  In this case, the court determined that oral argument was not necessary and resolved Plaintiff's motions on the basis of his written submissions.  *See id.*

For these reasons, the court has determined that Plaintiff's "Motion for Direction" is without merit.  Accordingly, that motion should be **DENIED**.

## CONCLUSION

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion for leave to amend his complaint,[20] two motions for appointment of counsel,[21] two motions for a TRO,[22] and "Motion for Direction"[23] be **DENIED**.

---

[20] *See* docket no. 7.

[21] *See* docket nos. 4, 6.

[22] *See* docket no. 8, 12.

[23] *See* docket no. 11.

**IT IS FURTHER RECOMMENDED** that Plaintiff's complaint be **DISMISSED** as frivolous under the in forma pauperis statute. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within ten (10) days after receiving it. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 26th day of September, 2007.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge